## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**HASSAN AOUN,**
Plaintiff,

v.

**CITY OF DEARBORN HEIGHTS,**
a Michigan municipal corporation,

and

**HASSAN AHMAD,**
in his individual and official capacities,
Defendants.

Case: 2:26−cv−12275
Assigned To : Grey, Jonathan J.C.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 7/6/2026
Description: CMP HASSAN AOUN V
DEARBORN HEIGHTS ET AL (SS)

Case No._____
Hon._____
Magistrate_____

_____

Hassan Aoun
P.O. Box 1132
Dearborn MI 48121
Aoun1980@aol.com
_____

**VERIFIED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983 - FIRST AMENDMENT, AS APPLIED THROUGH THE FOURTEENTH AMENDMENT**

**JURY DEMAND**

Plaintiff discloses that he has no pending federal case in the United States District Court for the Eastern District of Michigan regarding the city of Dearborn Heights and  HASSAN AHMAD and his individual capacity and office capacity Plaintiff Hassan Aoun, proceeding pro se, files this Verified Complaint against  Defendants City of Dearborn Heights and Hassan Ahmad, individually and in his official capacity, and alleges as follows:

**U.S. CIVIL STATUTE UNDER WHICH PLAINTIFF IS FILING 42 U.S.C. § 1983.**

## NATURE OF THE ACTION

1. This is a federal civil-rights action under 42 U.S.C. § 1983 for violations of Plaintiff Hassan Aoun's rights under the First Amendment, as applied to state and local government through the Fourteenth Amendment.

2. This action arises from the June 23, 2026 Dearborn Heights City Council meeting.

3. During public comment, Plaintiff approached the podium as the recognized speaker to address a matter of public concern involving permit compliance, public accountability, and municipal oversight.

4. Plaintiff raised concerns about non-party City Council Member Hassan Saab, who Plaintiff understands is also a contractor. Plaintiff questioned whether the required permit had been pulled before the work sequence occurred: first the installation of a fence, and then demolition or removal work at or near a city/street location.

5. Defendant Hassan Ahmad, acting as chair or presiding official and under color of state law, personally interrupted Plaintiff while Plaintiff was speaking during public comment.

6. Plaintiff alleges, based on the timing and sequence of events, that Defendant Ahmad interrupted Plaintiff to prevent Plaintiff from questioning Ahmad's fellow

council member and colleague, Mr. Saab, about the permit issue while Plaintiff was present.

7. Plaintiff was not threatening anyone, inciting violence, physically interfering with the meeting, speaking from the audience, interrupting another speaker, or preventing the City Council from conducting its business.

8. After Plaintiff objected, stated that he would seek injunctive relief in federal court, and left the meeting, Defendant Ahmad permitted or invited Mr. Saab to respond to the same permit issue. Mr. Saab then stated that the permit had been pulled.

9. Plaintiff alleges that Defendant Ahmad's decision to interrupt Plaintiff first, and then allow Mr. Saab to answer only after Plaintiff left, demonstrates viewpoint-based and unequal treatment of Plaintiff's protected speech.

10. Plaintiff further alleges that the City had prior notice of a public-comment problem because the City Attorney acknowledged a prior incident involving public-comment restrictions, removal, threatened removal, or First Amendment concerns. The details of that prior incident are in the City's possession and require Monell discovery.

11. Plaintiff seeks declaratory relief, injunctive relief, nominal damages, compensatory damages in the amount of Five Hundred Million Dollars

($500,000,000.00), punitive damages against Defendant Ahmad in his individual capacity, costs, and all other relief authorized by law.

## PARTIES

12. Plaintiff Hassan Aoun is an individual citizen who attends public meetings, speaks during public comment, engages in political speech, and petitions government officials about matters of public concern.

13. Defendant City of Dearborn Heights is a Michigan municipal corporation located in Wayne County, Michigan.

14. Defendant Hassan Ahmad was, at all relevant times, acting under color of state law as chair or presiding official during the June 23, 2026 Dearborn Heights City Council meeting.

15. Defendant Ahmad is sued in his individual capacity because he personally participated in the alleged violation of Plaintiff's constitutional rights by interrupting and restricting Plaintiff's public-comment speech.

16. Defendant Ahmad is also sued in his official capacity for declaratory and prospective injunctive relief.

## JURISDICTION AND VENUE

17. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

18. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

19. This Court has civil-rights jurisdiction under 28 U.S.C. § 1343.

20. This Court may grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

21. Venue is proper in this District because the events giving rise to this action occurred in Dearborn Heights, Wayne County, Michigan, within the Eastern District of Michigan, Southern Division.

## APPLICABLE LAW

22. Section 1983 provides a civil remedy against a person who, under color of state law, causes the deprivation of rights secured by the Constitution or federal law. 42 U.S.C. § 1983.

23. The First Amendment protects political speech, criticism of government officials, speech during public-comment periods, and the right to petition government for redress of grievances.

24. The First Amendment applies to state and local governments through the Fourteenth Amendment. Gitlow v. New York, 268 U.S. 652, 666 (1925).

25. A city council or similar public-comment period is a limited public forum. Youkhanna v. City of Sterling Heights, 934 F.3d 508, 518-19 (6th Cir. 2019); Lowery v. Jefferson County Board of Education, 586 F.3d 427, 432 (6th Cir. 2009).

26. In a limited public forum, the government may enforce reasonable and viewpoint-neutral rules on time, place, manner, relevance, and decorum, but it may not discriminate against speech based on viewpoint. Rosenberger v. Rector & Visitors of University of Virginia, 515 U.S. 819, 829-30 (1995); Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 806 (1985).

27. The Sixth Circuit has held that restrictions targeting abusive, personally directed, or antagonistic speech during public comment can amount to viewpoint discrimination when used to silence criticism. Ison v. Madison Local School District Board of Education, 3 F.4th 887, 893-95 (6th Cir. 2021).

28. The Sixth Circuit has also held that a presiding official may not silence a public-comment speaker because the speaker criticizes public officials or because the audience reacts negatively. Boddy v. Grech, No. 25-3490, slip op. at 10-14 (6th Cir. June 10, 2026); Bible Believers v. Wayne County, 805 F.3d 228, 252-53 (6th Cir. 2015) (en banc).

29. A municipality is liable under § 1983 only when the constitutional violation is caused by a municipal policy, custom, practice, ratification, decision by a final policymaker, or deliberate indifference in training or supervision. Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978); Pembaur v. City of Cincinnati, 475 U.S. 469, 480-84 (1986); City of Canton v. Harris, 489 U.S. 378, 388-92 (1989).

30. A failure-to-train claim requires deliberate indifference to a known or obvious need for training. A pattern of similar constitutional violations is ordinarily necessary to show that the municipality had notice of the deficiency. City of Canton, 489 U.S. at 388-92; Connick v. Thompson, 563 U.S. 51, 61-62 (2011).

31. An individual-capacity claim seeks to impose personal liability on a government official for actions taken under color of state law. Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).

32. The loss of First Amendment freedoms, even for minimal periods of time, constitutes irreparable injury for injunctive-relief purposes. Elrod v. Burns, 427 U.S. 347, 373 (1976).

## FACTUAL ALLEGATIONS

33. On June 23, 2026, Plaintiff attended a Dearborn Heights City Council meeting.

34. The meeting included a public-comment portion during which members of the public were permitted to address City officials.

35. Plaintiff approached the podium and was recognized as the public-comment speaker.

36. Plaintiff was not speaking from the audience and was not interrupting another speaker.

37. Plaintiff raised a permit-compliance issue involving non-party City Council Member Hassan Saab.

38. Upon information and belief, Mr. Saab is a Dearborn Heights City Council member and also performs or is connected to contracting work.

39. Plaintiff questioned whether Mr. Saab had obtained the required permit before the work sequence occurred: first the installation of a fence, and then demolition or removal work at or near a city/street location.

40. Plaintiff's speech concerned permit compliance, municipal oversight, public accountability, government transparency, and whether City-related work was being performed lawfully.

41. While Plaintiff was speaking about that permit issue, Defendant Ahmad interrupted Plaintiff.

42. Defendant Ahmad interrupted Plaintiff while Plaintiff was still the recognized speaker at the podium.

43. Defendant Ahmad's interruption interfered with Plaintiff's ability to complete his public comment.

44. Plaintiff objected and stated, in substance, that he had the right to continue speaking because he was not threatening anyone, was not creating an actual disturbance, and was not preventing the meeting from continuing.

45. Plaintiff was not making a true threat, was not inciting violence, was not physically interfering with the meeting, and was not preventing the City Council from conducting the meeting.

46. Plaintiff was not refusing to leave the podium after the expiration of a lawful time limit.

47. Defendant Ahmad did not identify a neutral time limit, neutral relevance rule, or neutral decorum rule that Plaintiff had violated.

48. Plaintiff alleges that Defendant Ahmad interrupted Plaintiff because Plaintiff was questioning permit compliance involving Ahmad's fellow council member and colleague, Mr. Saab.

49. Plaintiff further alleges that Defendant Ahmad did not want Mr. Saab to be questioned or expected to answer while Plaintiff was still present and speaking during public comment.

50. During the discussion, Gary Miyake stated that the Chief of Police could remove Plaintiff for disruption and that the decision was up to the Chief.

51. Plaintiff disputes any suggestion that a recognized public-comment speaker may be removed without a lawful constitutional basis, such as a true threat, actual material disruption, or conduct that prevents the meeting from continuing.

52. The Chief of Police declined to remove Plaintiff.

53. The Chief's decision not to remove Plaintiff supports Plaintiff's allegation that Plaintiff was not causing an actual material disruption warranting removal.

54. Plaintiff stated that he would seek injunctive relief in federal court and then left the meeting.

55. After Plaintiff left, Defendant Ahmad permitted or invited Mr. Saab to respond to the same permit issue.

56. Mr. Saab then stated that the permit had been pulled.

57. Mayor Moe Baydoun also addressed the permit issue and indicated that the permit amount was $105,000.

58. The permit issue was therefore addressed after Plaintiff left, showing that the subject was relevant to City business and appropriate for public discussion.

59. Plaintiff alleges that the sequence of events demonstrates viewpoint-based and unequal treatment: Plaintiff was interrupted when he raised the issue, but Mr. Saab was allowed to answer after Plaintiff left.

60. Plaintiff alleges that a viewpoint-neutral procedure would not allow a presiding official to silence the recognized speaker first and then allow the criticized colleague to answer the same issue only after the speaker leaves.

61. Mr. Saab also stated that Plaintiff had been harassing him on Facebook.

62. Plaintiff disputes that characterization and alleges that the Facebook statement did not justify interrupting, restricting, or chilling Plaintiff's public-comment speech about permit compliance.

63. Defendant Ahmad's conduct chilled Plaintiff's speech and would chill a person of ordinary firmness from continuing to speak at public meetings.

64. Plaintiff intends to continue attending and speaking at Dearborn Heights public meetings.

65. Plaintiff reasonably fears future interruption, viewpoint-based restriction, threats of removal, or police involvement if he criticizes City officials or asks questions about permits, City work, public funds, public property, or government accountability.

## MUNICIPAL-LIABILITY ALLEGATIONS AGAINST THE CITY

66. Plaintiff incorporates the preceding paragraphs as if fully stated here.

67. The City of Dearborn Heights opened the public-comment portion of the meeting as a limited public forum.

68. The City delegated authority to the chair or presiding official to control public-comment procedure and meeting decorum.

69. Defendant Ahmad exercised that delegated authority when he interrupted and restricted Plaintiff's speech.

70. Plaintiff alleges that the City failed to adequately train, supervise, and discipline City Council members, presiding officials, police personnel, and other public-meeting officials regarding the constitutional limits on restricting speech during public comment.

71. The training deficiency concerns a recurring and obvious area of municipal responsibility: how City officials must handle recognized speakers during public-comment periods without violating the First Amendment.

72. Plaintiff alleges, on information and belief, that before the June 23, 2026 incident involving Plaintiff, the City had notice of at least one prior incident involving alleged unconstitutional restriction of public-comment speech, interruption of a recognized speaker, removal or threatened removal of a speaker, police involvement during public comment, or other public-meeting conduct raising First Amendment concerns.

73. Plaintiff further alleges, on information and belief, that the City Attorney acknowledged the existence of a prior incident involving public-comment restrictions, removal, threatened removal, or First Amendment concerns.

74. The details of that prior incident, including the date, persons involved, video, audio, minutes, complaints, communications, legal analysis, training response, and any corrective action taken or not taken, are presently within the possession, custody, and control of the City.

75. Because the City possesses the details of the prior incident and the City's training response, Plaintiff requires Monell discovery to identify the full pattern of notice, prior incidents, training deficiencies, supervision failures, ratification, and deliberate indifference.

Page 12

76. Despite notice of the prior incident, the City failed to correct the deficiency, failed to provide adequate First Amendment training, failed to implement clear constitutional public-comment procedures, failed to supervise presiding officials, and failed to prevent the same type of constitutional violation from recurring.

77. The City failed to train officials that a recognized public-comment speaker may not be interrupted, silenced, threatened with removal, or removed because the speaker criticizes a council member, questions permit compliance, asks about a politically sensitive subject, causes embarrassment, or triggers audience reaction.

78. The City failed to train officials on the constitutional difference between a recognized speaker at the podium and an audience member interrupting a meeting from the crowd.

79. The City failed to train officials that the proper response to audience reaction is to control the audience in a viewpoint-neutral manner, not to silence the recognized speaker.

80. The June 23, 2026 incident was a foreseeable result of the City's failure to train and supervise officials on public-comment rights, viewpoint neutrality, heckler's veto principles, and lawful meeting decorum.

81. The City's failure to train, supervise, and discipline was deliberately indifferent to the known or obvious risk that officials would violate the constitutional rights of public-comment speakers.

82. The City's policies, customs, practices, ratification, failures to train, and failures to supervise were moving forces behind the alleged violation of Plaintiff's constitutional rights.

## CLAIMS FOR RELIEF

## COUNT I

## 42 U.S.C. § 1983 - FIRST AMENDMENT FREE SPEECH, PETITION, AND VIEWPOINT DISCRIMINATION
## Against Defendant Ahmad in His Individual Capacity

83. Plaintiff incorporates the preceding paragraphs as if fully stated here.

84. Plaintiff's speech during public comment was protected by the First Amendment.

85. Plaintiff spoke on matters of public concern, including permit compliance, public accountability, municipal oversight, and government conduct.

86. Defendant Ahmad acted under color of state law when he presided over the meeting and controlled the public-comment process.

87. Defendant Ahmad personally interrupted and restricted Plaintiff's speech while Plaintiff was the recognized speaker at the podium.

88. Defendant Ahmad's interruption was not based on a true threat, actual material disruption, or conduct that prevented the meeting from continuing.

89. Plaintiff alleges that Defendant Ahmad interrupted Plaintiff because of Plaintiff's viewpoint, criticism, subject matter, and questions concerning Mr. Saab and permit compliance.

90. Defendant Ahmad's conduct violated Plaintiff's First Amendment rights to free speech and to petition government for redress of grievances.

91. As a direct and proximate result, Plaintiff suffered constitutional injury, loss of public-comment opportunity, chilling of speech, and damages.

## COUNT II

## 42 U.S.C. § 1983 - FIRST AMENDMENT AND FOURTEENTH AMENDMENT MUNICIPAL LIABILITY

### Against the City of Dearborn Heights

92. Plaintiff incorporates the preceding paragraphs as if fully stated here.

93. The City of Dearborn Heights is liable under § 1983 because the alleged violation of Plaintiff's rights was caused by municipal policy, custom, practice, ratification, failure to train, failure to supervise, failure to discipline, and/or the actions of officials with delegated or final authority over public-comment procedure.

94. The City had notice of a need for training and supervision because, on information and belief, the City Attorney acknowledged at least one prior incident

involving public-comment restrictions, removal, threatened removal, or First Amendment concerns.

95. The prior incident placed the City on notice that officials needed training on limited public forums, viewpoint neutrality, public-comment rights, true threats, actual material disruption, audience reaction, and the difference between a recognized speaker at the podium and an audience member interrupting proceedings.

96. The City failed to correct the deficiency after notice and failed to train, supervise, and discipline officials in the area where the constitutional violation occurred.

97. The City's public-comment practices, as applied, permitted protected criticism and permit-compliance questions to be treated as disruption when directed toward a City Council member, contractor, or politically connected person.

98. The City's failure to train and supervise was deliberately indifferent to the known or obvious risk that officials would violate public-comment speakers' constitutional rights.

99. The City's policies, customs, practices, ratification, failures to train, failures to supervise, and failures to discipline were moving forces behind the violation of Plaintiff's rights.

100. As a direct and proximate result, Plaintiff suffered constitutional injury, loss of public-comment opportunity, chilling of speech, and damages.

## COUNT III

**42 U.S.C. § 1983 - FOURTEENTH AMENDMENT EQUAL PROTECTION / UNEQUAL APPLICATION OF PUBLIC-COMMENT RULES**

**Against Defendant Ahmad in His Individual Capacity and Against the City**

101. Plaintiff incorporates the preceding paragraphs as if fully stated here.

102. Plaintiff was interrupted and restricted when he raised the permit issue during public comment.

103. After Plaintiff left, Mr. Saab was permitted to respond to the same permit issue.

104. Plaintiff alleges that Defendants treated Plaintiff differently because of Plaintiff's viewpoint, criticism, identity as a public critic, and public-accountability questions.

105. Plaintiff alleges that this unequal treatment was arbitrary, viewpoint-based, and not rationally related to a neutral public-comment rule as applied to Plaintiff.

106. As to the City, Plaintiff alleges that the unequal application of public-comment rules was caused by the municipal policies, customs, practices, ratification, failures to train, and failures to supervise alleged above.

107. As a direct and proximate result, Plaintiff suffered deprivation of rights secured by the First and Fourteenth Amendments and related damages.

## COUNT IV

## DECLARATORY AND INJUNCTIVE RELIEF

**Against the City of Dearborn Heights and Defendant Ahmad in His Official Capacity**

108. Plaintiff incorporates the preceding paragraphs as if fully stated here.

109. Plaintiff intends to continue attending and speaking at Dearborn Heights public meetings.

110. Plaintiff reasonably fears that Defendants will again interrupt, silence, threaten removal of, or remove Plaintiff based on viewpoint, criticism, public-accountability questions, or audience reaction.

111. Plaintiff has no adequate remedy at law for future violations of First Amendment rights.

112. Declaratory and injunctive relief would serve the public interest by protecting viewpoint-neutral public-comment procedures and preventing future constitutional violations.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

A. Declare that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

B. Declare that Defendant Ahmad, acting under color of state law, violated Plaintiff's constitutional rights by interrupting and restricting Plaintiff's protected public-comment speech based on viewpoint, criticism, subject matter, and/or audience reaction;

C. Declare that the City of Dearborn Heights violated Plaintiff's constitutional rights through its policies, customs, practices, ratification, failure to train, failure to supervise, failure to discipline, and/or actions of officials with authority over public-comment procedure;

D. Enter preliminary and permanent injunctive relief prohibiting Defendants, their officers, officials, agents, employees, successors, and all persons acting in concert with them from interrupting, silencing, threatening removal of, or removing recognized public-comment speakers based on viewpoint, criticism of government officials, criticism of politically connected persons, public-accountability questions, audience reaction, or other protected speech;

E. Order Defendants to administer public-comment periods in a viewpoint-neutral manner and to distinguish protected speech from true threats, actual material disruption, or conduct that prevents a meeting from continuing;

F. Order Defendants to preserve all video, audio, minutes, records, emails, text messages, and other communications concerning the June 23, 2026 meeting, the prior incident acknowledged by the City Attorney, training and supervision on public-comment procedures, and the incidents described in this Complaint;

G. Award compensatory damages in the amount of $500,000,000.00, or another amount determined by the jury and permitted by law;

H. Award nominal damages for the violation of constitutional rights;

I. Award punitive damages against Defendant Hassan Ahmad in his individual capacity only, to the extent permitted by law;

J. Award costs, pre-judgment interest, post-judgment interest, and any other relief authorized by law; and

K. Grant such further legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VERIFICATION UNDER 28 U.S.C. § 1746

I, Hassan Aoun, declare under penalty of perjury that the factual allegations in this

Verified Complaint are true and correct to the best of my personal knowledge,

information, and belief.

Respectfully submitted,

_____        Date_07-04-2026_____

Hassan Aoun
Plaintiff, Pro Se
po Box 1132
Dearborn MI 48121

Page 21

JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff     Hassan Aoun
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     City of Dearborn Heights
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**        **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane        ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product                Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |        Liability        ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &                Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
|       & Enforcement of Judgment |        Slander                Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'                Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |        Liability        ☐ 368 Asbestos Personal | |        New Drug Application | ☐ 470 Racketeer Influenced and |
|        Student Loans | ☐ 340 Marine                Injury Product | | ☐ 840 Trademark |        Corrupt Organizations |
|        (Excludes Veterans) | ☐ 345 Marine Product                Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |        Liability        **PERSONAL PROPERTY** | **LABOR** |        Act of 2016 |        (15 USC 1681 or 1692) |
|        of Veteran's Benefits | ☐ 350 Motor Vehicle        ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle        ☐ 371 Truth in Lending |        Act | **SOCIAL SECURITY** |        Protection Act |
| ☐ 190 Other Contract |        Product Liability        ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal                Property Damage |        Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |        Injury        ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) |        Exchange |
| | ☐ 362 Personal Injury -                Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**        **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights        **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting        ☐ 463 Alien Detainee |        Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |        Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment        ☐ 510 Motions to Vacate | |        or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/                Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability |        Accommodations        ☐ 530 General | |        26 USC 7609 |        Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -        ☐ 535 Death Penalty | | |        Agency Decision |
| |        Employment        **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities -        ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |        State Statutes |
| |        Other        ☐ 550 Civil Rights | ☐ 465 Other Immigration | | |
| | ☐ 448 Education        ☐ 555 Prison Condition |        Actions | | |
| | ☐ 560 Civil Detainee - | | | |
| |                Conditions of | | | |
| |                Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
500 million
**42 U.S.C. § 1983.**

Brief description of cause:   **42 U.S.C. § 1983 Civil action for deprivation of rights.**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $
**$500,000,000.00**

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*        JUDGE _____        DOCKET NUMBER _____

DATE
07-04-2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

| RECEIPT # _____ | AMOUNT _____ | APPLYING IFP _____ | JUDGE _____ | MAG. JUDGE _____ |
|---|---|---|---|---|

PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?

☐ Yes

☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.　　　　Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other
court, including state court? (Companion cases are matters in which
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

☐ Yes

☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

**Plaintiff discloses that he has no pending federal case in the United States District Court for the Eastern District of Michigan regarding the city of Dearborn Heights and  HASSAN AHMAD and his individual capacity and office capacity**